## WOODS et al. v. WOODS et al.

(Circuit Court, N. D. West Virginia. December 28, 1910.)

1. PARTITION (§ 83*)—EQUITY—ACCOUNTING—JURISDICTION.

Where a bill for partition and also for an accounting not only alleged the legal title in complainant, but also uninterrupted possession for over 50 years, equity had jurisdiction, though the case also involved a determination of the lawfulness of the claims of certain defendants whom complainant claimed were in possession of the land under unlawful leases and illegal conveyances or as squatters, etc., under the rule that where equity has properly taken jurisdiction of a suit relating to real estate, based on facts showing independent equity grounds, it will consider and decide questions concerning the title necessary to a proper disposition of the entire controversy.

[Ed. Note.—For other cases, see Partition, Cent. Dig. §§ 228, 229; Dec. Dig. § 83.*]

2. QUIETING TITLE (§ 4*)—NATURE OF ACTION—REQUISITES—EJECTMENT.

Where complainants alleged both legal title and possession to the land in controversy, they were entitled to maintain a bill to remove a cloud on the title, consisting of adverse claims made by defendants against

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

whom complainants, because of their possession, could not maintain ejectment.

[Ed. Note.—For other cases, see Quieting Title, Cent. Dig. §§ 5, 7, 12; Dec. Dig. § 4.*]

3. QUIETING TITLE (§ 4*)—CLOUD ON TITLE—REFORMATION OF INSTRUMENTS.
Where, in addition to seeking a vindication of title and a recovery of possession, complainants alleged facts entitling them to a decree cancelling certain conveyances made to defendants, ejectment would not afford a complete or adequate remedy.

[Ed. Note.—For other cases, see Quieting Title, Cent. Dig. §§ 5, 7, 12; Dec. Dig. § 4.*].

4. QUIETING TITLE (§ 12*)—EQUITABLE RELIEF.
Where complainants show an independent right to equitable relief, such as will authorize equitable jurisdiction, a prayer to quiet title will be entertained, though complainants are not in possession.

[Ed. Note.—For other cases, see Quieting Title, Cent. Dig. §§ 8–12, 44, 45; Dec. Dig. § 12.*]

5. COURTS (§ 334*)—FEDERAL COURTS—STATE PRACTICE.
Code W. Va. c. 79, § 1, provides that tenants in common and coparceners shall be compellable to make partition, and the circuit court of a county wherein the estate, or any part thereof, may be, shall have jurisdiction in cases of partition, and in the exercise thereof may take cognizance of all questions of law affecting the legal title that may arise in any such proceeding. Held, that such section was available in a suit for partition in a federal court sitting in West Virginia to authorize the court in that suit to determine all questions of law affecting the title.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 334.*

Conformity of practice in common-law actions to that of state court, see notes to O'Connell v. Reed, 5 C. C. A. 594; Nederland Life Ins. Co. v. Hall, 27 C. C. A. 392.]

6. PARTITION (§ 63*)—LOCATION OF LAND—PROOF.
Complainants in a suit for partition were bound to show either by an actual survey or by the testimony the location of the land alleged in the bill to be claimed by some of the defendants, so as to enable the court to place complainants in possession of the portion that they should recover if the law and the facts should require a decree to that effect.

[Ed. Note.—For other cases, see Partition, Dec. Dig. § 63.*]

7. PARTITION (§ 70*)—TRIAL—DETERMINATION BY JURY.
Where, in a suit for partition and for an accounting, the record disclosed that it was essential thereto that the true amount of the acreage of the land involved should be ascertained, and that in order to do so the validity of the claims of the defendants thereto should be determined, the court would submit such questions of title to a jury.

[Ed. Note.—For other cases, see Partition, Dec. Dig. § 70.*]

In Equity. Bill by Samuel V. Woods and others against Harriett L. Woods and others for partition of certain real estate and for an accounting. On final hearing. Decree ordered for complainant as against certain defendants for failing to appear and answer, and continued as to others for the trial of legal issues to a jury.

John Bassel and J. Hop Woods, for complainants.

John J. Davis, John W. Davis, Fred O. Blue, A. F. Peddicord, Warder & Robinson, and Neil J. Fortney, for defendants.

GOFF, Circuit Judge. This suit was instituted at November rules, 1905, in the circuit court of Barbour county, W. Va., and was subsequently as provided by law duly removed to this court. Complainants ask for the partition of a tract of 3,000 acres of land, situated in the counties of Barbour and Tucker in said state, patented to Frederick Berlin and John S. Hoffman by the state of Virginia, on the 1st day of May, 1855, alleging that they, and some of the defendants by proper conveyances and in due course of law, became the owners of said land, and fully vested with the legal title thereof. The prayer of the bill is for partition of the land between complainants and defendants, devisees of Samuel Woods and Frank Woods, as to one moiety thereof, and the defendant Genevieve Boggess Parr, as to the other moiety. The bill further avers that complainants have the possession of the property, and have exercised ownership over it; that they have had tenants representing them thereon; that one Benjamin F. Young of Bath, Steuben County, New York (who had died testate), had during his lifetime set up some claim to the said land, "but that as to the character, quality, and amount of such claim," complainants were not advised; but they allege that said Young never had title, legal or equitable, to the land or any part thereof; that he never was in possession of it or any part thereof, in person or by tenant, holding the same adversely, openly and continuously against said Berlin and Hoffman, or either of them, or against the parties claiming under them, or that the land or any part thereof was ever assessed to him, or that he had ever paid taxes thereon; and complainants further charged that if said pretended claim was intended to cover the land in controversy that it constituted a cloud upon the title of complainants and defendants who claimed under the Berlin and Hoffman title, and that they were in equity entitled to have the same removed. The bill also set forth that the land so prayed to be partitioned was, for the most part rough, mountainous, with but slight improvements and little timber of value thereon, but supposed to be underlaid with the "Freeport" vein of coal and a limestone strata; that some portions of it was occupied by persons claiming possession against both the complainants and the defendants, the extent of such occupancy being unknown to complainants who pray the right to contest the same upon proper pleadings and proofs. It is further alleged that those under whom complainants claim title to said land, had held from the year 1855 not only the legal title, but also the undisputed possession of it, and had paid the taxes thereon; that as between the heirs of Samuel Woods, deceased, complainants and defendants, owners of the one undivided half of said land, and the defendant Genevieve Boggess Parr, owner of the other half, the former had paid the greater part of said taxes, the excess of their share so paid constituting with interest thereon a lien upon the moiety owned by her, which, when the bill was filed, amounted to $952.79, which complainants prayed might be decreed to be a lien on her moiety. A demurrer to the bill was after argument and consideration overruled, and leave to defendants to answer was given; and an amended bill was tendered, and by order of the court filed, in which the allegations of the original bill were incorporated, and a number of additional de-

fendants brought before the court, who were alleged to be claiming title to portions of the land, and to be in tortious possession of the same, among them those claiming under Young before referred to, who it was alleged under a conveyance with covenants of special warranty, dated September 9, 1901, were claiming about 1,500 acres of land, part of which if not all was supposed to be included in the tract conveyed by the Berlin-Hoffman patent, dated May 1, 1855; the coal and mining privileges under said 1,500 acres was alleged to have been conveyed to the defendant William F. Johnston, who conveyed the same to the defendant J. M. Guffey, who then conveyed such interests to the J. M. Guffey Company, a corporation, the title to the surface thereof being vested in the defendants Albert Thompson and Ira E. Robinson.

It is set forth in the amended bill that the defendants thereto who did not claim title by conveyances were either "squatters," "tenants by sufferance under said patent," or "tenants in possession under leases from said patentees or their assigns," or "under the complainants," and the prayer was that the title and possession of all the defendants which were not under and in subordination to the Berlin-Hoffman patent, might be canceled as clouds thereon, and on the title of those claiming under it; that complainants and defendants who claimed under said patent might be placed in complete possession of said land and that if it should be necessary an accounting be had as to those defendants wrongfully in possession, relating to rents and profits; that partition and accounting as between the present owners, claimants under the Berlin-Hoffman patent, be had as before set forth. The original and amended bills were duly verified, and answers under oath were asked for. A demurrer to the amended bill was overruled, and answers were filed by many of the defendants, to which replications were filed and issue thereon joined. A number of defendants who were duly served with summons failed to answer, and as to them the bills were taken as confessed.

Defendants in their answers insist that a court of equity has not jurisdiction of the controversy set forth in complainant's bills. A re-examination of the questions involved compels me to the conclusion I reached when I overruled the demurrers. For a moment let us again consider the case made by the bills. Their object is not solely to remove the clouds alleged to be on the title to the land included in the Berlin-Hoffman patent, charged as owned by complainants and some of the defendants, but also to partition the land among those who if the statements in the bill are true, are the owners thereof, and in addition thereto to secure an accounting among such owners relating to the taxes paid by them respectively on said land. Not only is the legal title alleged to be in said claimants, but also is the uninterrupted possession of the land charged as having been held by them and those under whom they claim, for over 50 years last past. These statements, whatever they may be worth on final hearing, must as regards the demurrer, be taken as true, and consequently well-established grounds of equity jurisdiction—partition and accounting—have properly been presented for the consideration of the court. Connected therewith, incidental thereto, and essential to the proper administra-

tion of justice so far as this case is concerned, are the questions raised by the allegations relating to the clouds charged as having been spread over the Berlin-Hoffman title, by the defendants, who are said to have taken tortious possession of some portions of that land, under unlawful leases, squatters' claims, and illegal conveyances. I think it is well established that, if a court of equity has properly before it for decision a suit based on facts showing independent equity grounds, relating to real estate, it will consider and decide questions concerning the title or the boundary thereof, if necessary to the proper disposition of the controversy. Conceding the allegations of the bills to be true, the holders of the legal title to the land included in the Berlin-Hoffman patent, could not maintain ejectment, for they are in possession, and this is one of the reasons of the rule that a bill to quiet title can be maintained only by those who allege themselves to be in possession. If a suit is filed under our general equity practice—independent of the provisions of statutes—the object being to remove a cloud on title, if it sets forth no facts showing grounds for other equitable relief, it must aver both legal title and possession in the complainant, and if when the proofs are taken there has been a failure to clearly establish both, the bill will be dismissed. A party holding the legal title, but out of possession should bring ejectment; if having the legal title and in possession, should resort to equity to remove the clouds on his title; if his possession is an equitable one he should acquire the legal title and then if out of possession bring ejectment. Judging this case on its alleged facts, and applying the rules I have mentioned, we find ourselves compelled to maintain the jurisdiction of a court of equity over this controversy.

When in addition to seeking a vindication of title and the recovery of the possession of land, complainants allege facts entitling them to a decree canceling conveyances made to the defendants, ejectment is not a complete, nor is it an adequate remedy, and therefore equity will assume jurisdiction. If the complainants show an independent right to equitable relief, such as will authorize equitable jurisdiction, the prayer to quiet title will be entertained even though they are not in possession. The rule that a bill to quiet title will not lie unless complainants are in possession, has in recent years been modified by the terms of state legislation, and the effect given the same in the federal courts. The reason for this is that if such legislation gives a right and a remedy, that then it is essential to the due administration of justice that the federal courts should recognize it. The decisions relating to this question are many and clear.

The Code of West Virginia contains the following provision:

"Tenants in common, joint tenants and coparceners, shall be compellable to make partition, and the circuit court of the county wherein the estate, or any part thereof, may be, shall have jurisdiction, in cases of partition, and in the exercise of such jurisdiction, may take cognizance of all questions of law affecting the legal title that may arise in any proceeding." Chapter 79, § 1.

That this legislation is, in the courts of West Virginia, applicable to cases of the character of the one I am now considering is I think without doubt. Decamp v. Carnahan et al., 26 W. Va. 839, and cases

there cited; Moore v. McNutt, Commissioner, et al., 41 W. Va. 695, 24 S. E. 682; Swick v. Rease et al., 62 W. Va. 557, 59 S. E. 510.

Let us now consider, so far as may be necessary in connection with the action the court finds it proper to take at this time, the answers of certain of the defendants, and the proofs taken by the complainants and said defendants. The answers deny the title of complainants as also their possession; allege possession by such defendants under grants from the commonwealth of Virginia, to Stephen Maylan, and through such grants by regular alienations and lawful possession to the defendants; claims assessment of said land in the name of defendants for the purpose of taxation, and the payment of such taxes; some of them claim color of title by defendants to the land alleged by complainants to be in their possession, while others set forth title papers which they allege give them legal title to the portions of the land in their possession, and all of them insist that they and each of them have been in the actual, open, notorious, exclusive, and continuous adverse possession, by themselves and their predecessor in title, far longer than the statutory period of ten years preceding the institution of this suit.

Complainants insist that they have shown the location of the land they claim, and that they have connected themselves with the original grant from the commonwealth, giving them thereby the legal title. I do not think it advisable at this time, because of the procedure I deem it proper to direct in this case, to fully discuss the weight of the testimony relating to possession, but deem it proper to say that, as to a few of the defendants, it is satisfactory, as to many others it is contradictory and incomplete, while frequently it is valueless in that it does not so identify the tracts of land to which it relates, with the certainty that would justify a decree in favor of the defendants offering it. The complainants by actual survey, and by the testimony of witnesses, some of whom have been upon the ground, claim that they have established the identity as well as the location of the land they claim. However that may be, it is quite clear that they have not by the testimony so designated the land alleged in the bills to be claimed by some of the defendants, as to enable the court to place complainants in possession of the portions they should recover, if the law and the facts should compel a decree to that effect.

As to the defendants against whom the bill has been taken for confessed, the complainants are entitled to decrees, and as the court has jurisdiction of the subject-matter of the suit, it becomes necessary in order to properly dispose of it, that further proceedings should be had for the purpose of aiding the court in so doing. Unless the defendant Genevieve Boggess Parr concedes the correctness of the sum alleged by the complainants to have been paid by Samuel Woods and his representatives, on account of taxes due on the Berlin-Hoffman land, or admits a sum due by her on that account, the correctness of which is not denied by complainants, there will be a reference to the master for the purpose of ascertaining the same.

During the argument reference was made to the case of Buchanan Co. v. Adkins et al., 175 Fed. 692, 99 C. C. A. 246, decided by the Circuit Court of Appeals—this circuit. With the rule laid down in

that case I am in full accord, and it is I think quite apparent that, were it not for the reasons I have already referred to, relating to independent grounds of equity jurisdiction, this cause would not now be entertained. Recognizing as I must do the jurisdiction and duty of this court to entertain and dispose of this case, nevertheless I find myself impelled to also recognize and give effect to the rights of certain of the defendants to this litigation. The record discloses that while partition and accounting is asked for, it is essential thereto that the true amount of the acreage of the land involved should be ascertained, and that, in order to do so, the validity of the claims thereto of the defendants should be decided. It has been made to appear by the answers and the testimony that some of the defendants claim the land they are alleged to hold by titles which are entirely distinct and hostile to the right under which the complainants seek partition, and such being the case they have the right to submit their titles to the finding of a jury. But the court nevertheless having jurisdiction of the controversy, and being required to do those things necessary to dispose of it, will proceed to find where the true legal title is, and desiring the aid of a jury for that purpose, will submit proper issues to be tried by a jury on the law side of the court.

A decree may be drawn along the line indicated in this conclusion of the court. It is likely that complainants will not insist, in the light of the testimony, that all of the defendants claiming adversary to them, be required to submit their claims and proofs to the finding of a jury. If such be the case as to such defendants there may be a decree in their favor. The depositions now in the record may with the consent of the parties hereto be used and read in whole or in part on the trial of the issues to be submitted, and as to such issues, if they are not agreed upon by counsel, the court will hereafter give directions concerning them. Pending said trial on the law side of the court, this case will be continued. This disposition of the questions referred to, renders it unnecessary to dispose of other points argued and submitted by counsel.

The complainants may have leave to amend the amended bill by making the J. M. Guffey Company a defendant, and by asking such special prayers concerning it as they may think proper. The depositions heretofore taken cannot be read as against the J. M. Guffey Company unless with its consent.